IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| **KEISHONNA HARPER,**<br><br>    *Plaintiff,*<br>  v.<br><br>**LOCKHEED MARTIN CORP.,**<br>**6801 Rockledge Drive**<br>**Bethesda, Montgomery County, MD 20817,**<br><br>**Serve Registered Agent:**<br><br>    **CSC Lawyers Incorporating Service Co.,**<br>    **7 St. Paul Street, Suite 820**<br>    **Baltimore, MD 21202,**<br><br>    *Defendant.* | Civ. No. _____<br><br>**JURY TRIAL DEMANDED** |

**CIVIL COMPLAINT FOR EQUITABLE AND MONETARY
<u>RELIEF AND DEMAND FOR JURY TRIAL</u>**

Plaintiff Keishonna Harper ("Plaintiff" or "Harper") brings this lawsuit against Defendant Lockheed Martin Corp. ("Defendant" or "Lockheed") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, *et seq*.

**JURISDICTION AND VENUE**

1.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically Title VII and FMLA.

2.  This Court has personal jurisdiction over Defendant because it is incorporated in Maryland and maintain its headquarters in this judicial district.

1

3. Venue in this judicial district and division is proper pursuant to 28 U.S.C. § 1391(b)(1) because the judicial district in which the Defendant resides.

## PARTIES

4. Harper is a citizen of the United States and is domiciled in Fort Worth, Texas. Lockheed employed Harper from September 2006 to July 2020.

5. Defendant is a company incorporated in Maryland with offices throughout the United States and internationally, including headquarters in Bethesda, Maryland.

## ADMINISTRATIVE EXHAUSTION

6. Harper timely filed a charge of discrimination against Lockheed with the United States Equal Employment Opportunity Commission on July 31, 2020. The EEOC issued Harper a Right to Sue on September 25, 2020.

## FACTUAL ALLEGATIONS

7. Lockheed is an aerospace and defense company headquartered in Bethesda, Maryland. Most Lockheed sales and contracts are conducted with United States federal defense and security agencies. As a government contractor, Lockheed receives taxpayer money. Though a significant portion of its business is tied to U.S. government contracts, Lockheed maintains offices in over 50 countries and employs tens of thousands worldwide.

8. As a federal contractor, Lockheed must investigate employee, even manager, complaints in the workplace. This includes compliance with FMLA and allegations of discrimination or harassment. Because it receives taxpayer money, Lockheed must meet its obligations to be awarded and receive benefits under a federal contract.

9. Harper joined Lockheed in or about September 2006.

10. From 2014 to 2018, Harper was a Manager of Contract Negotiations at the Huntsville, Alabama facility. In her capacity as Manager of Contract Negotiations, Harper managed teams in Huntsville, Alabama and Sunnyvale, California.

11. In November 2017, Harper applied to the lateral position of Advance Development Program Contracts Manager with the Aeronautics Division in Fort Worth, Texas and was later selected for the position. Harper relocated from Huntsville to Fort Worth in March 2018.

12. As Advance Development Program Contracts Manager, Harper managed eight direct reports, the majority of whom were white men. Harper reported directly to Senior Manager of Contracts for the Aeronautics Division Leslie Ford in Palmdale, California and indirectly to Senior Business Manager Glenda White in Fort Worth.

13. Harper entered the Aeronautics Division position after a period of high turnover and lengthy vacancies. Before Harper transferred to the Aeronautics Division, the Advance Development Program Contracts Manager position had been vacant for over one year. Because of this, Harper's direct reports were openly insubordinate to her. In or about April 2018, one subordinate, Marion Miller, told Harper that Harper was not his manager, and she therefore could not tell him what to do. Harper reported this conduct to Leslie Ford and White, who excused Miller's conduct without reprimand.

14. On several occasions, Harper's subordinates yelled at her or refused to listen to her directions. Other employees refused to speak with Harper about customer issues, which were in Harper's purview, and instead would speak directly with upper management. On another occasion, a subordinate and unofficial lead, William Dean, yelled at Harper and told her to "not

give direction to his team" when she asked an early career professional to help support a customer contractual action for a customer.

15. In or about June 2018, Core Contracts Director Terry Ford ("Ford"), a white male located in Fort Worth, Texas, told Harper that he had "some feedback from the team" as it pertained to her as a manager. Of the feedback provided, Ford indicated to Harper that she had been accused of micromanaging her team and cursing in a meeting. When Harper asked whether this same feedback would have been relayed to a male manager, Ford told her bluntly that "no," it would not have been.

16. In the same conversation, Ford criticized Harper for a discussion with a female employee, also a woman of color, about the hardships of being a woman of color in a corporate setting. Ford told Harper, "We all see what you look like. You don't need to tell people."

17. While Ford was not Harper's supervisor, he admonished Harper in other instances, and his allegations were inappropriate or inaccurate. For example, Ford incorrectly claimed that Harper did not approve leave requests for her team, based on feedback from Harper's team. Ford's claim forced Harper to rebut the claim and offer documentation proving this allegation to be untrue. Harper told Ford that he and others in upper management were making it difficult for Harper to work with and lead her team because she was not given the benefit of the doubt that she was acting in the best interests of the team and the program. Harper also expressed that it was inappropriate for Ford to give Harper "feedback" or admonish her whenever one of Harper's direct reports complained.

18. In or about early 2019, Harper went on a business trip to the Palmdale office. While in Palmdale, Harper met with the Human Resources business partner, Joseph Metcalf, to report Ford's unsolicited feedback and comments about her race. The HR business partner told

Harper that he would discuss the matter with the program's business director, because Ford's comments were inappropriate. Harper is unaware of whether HR investigated the matter further.

19. Ford became Harper's first-line supervisor in or about February 2019 until November 2019.

20. Beginning in March 2019, Harper took approved FMLA leave to attend doctor's appointments and surgeries with her father, for whom she was primary caretaker. Specifically, Harper had approved intermittent FMLA leave from March 21, 2019 to April 12, 2019 for four days per month. In April 2019, Harper submitted a request to extend her intermittent FMLA leave. The extension was granted from April 13, 2019 to June 22, 2019 for twelve days per month.

21. Harper later extended her FMLA leave through November 11, 2020.

22. Throughout the requested FMLA leave period, Harper took less than 40 hours of leave. Additionally, there were few or no days when Harper was offline for the entire day.

23. During these absences from the office, Harper notified her team and her manager of her remote work and designated a temporary supervisor when necessary.

24. In or about November 2019, Lou Smolinsky was hired as the Director of Contracts for the Aeronautics Division, replacing Ford as Harper's first-line supervisor. Smolinsky worked out of the Palmdale office.

25. In late 2019, Smolinsky called Harper's office when he was aware that she was out of the office for a doctor's appointment. When Harper did not pick up the phone, Smolinsky sent Harper an email reprimanding her for leaving the office early, despite Harper informing Smolinsky of her appointment four days prior, to which responded to with an acknowledgment and, "Thank you for the heads up".

26. On January 20, 2020, Martin Luther King Jr. Day, Harper notified her team that she would be out for part of the day to accompany her father to a doctor's appointment. While Harper was absent, her subordinate Jennifer Mattchett, told other employees, "I know why she's really out. She wanted to take off for MLK day."

27. In or about late January 2020, Harper discussed Lockheed's EEO policies with her direct reports during a regularly scheduled team meeting. Harper conducted this meeting on the advice of HR following the Mattchett incident.

28. In February 2020, Smolinsky and Ford conducted Harper's annual performance review. In her review, Harper received excellent marks and a high ranking in each category. However, Smolinsky and Ford criticized Harper for her absences from the office and indicated that this was the only weakness in her performance for 2019 for which she needed to improve. Harper protested, reminding her supervisors that her absences were the result of FMLA leave to care for her father. Smolinsky and Ford admitted that they were aware of the circumstances but expressed, "This is the feedback we received from your team".

29. Harper contacted HR to address Smolinsky's criticism. HR told Harper that FMLA leave was protected, and Harper should not be reprimanded for use of leave under FMLA. HR also said that it would address these issues with Smolinsky. Harper is unaware of any further investigation by HR.

30. In March 2020, Harper met with Aeronautics Vice President of Contracts Linda Smith. In this meeting, Harper described the discriminatory comments she faced from her subordinates and supervisors. Harper also discussed the regular insubordination from her direct reports. While Smith had indicated that she wanted a follow-up discussion and would have to take immediate action on some of the things Harper expressed to her, Harper never heard back

from Smith about their conversation again. Harper is unaware of any further investigation by Smith into Harper's claims.

31. On or about April 4, 2020, a Lockheed internal EEO investigator notified Harper that a direct report had filed a sexual harassment complaint against her that included six allegations. Harper denied most of the allegations but admitted to one of alleged comment to a new hire who had worked tirelessly to submit her first proposal. Harper told that employee, "You did an awesome job, high five for popping your first cherry and submitting your first proposal. How did you feel about it?"

32. While rebutting the allegations against her, Harper told the EEO investigator of several instances of racist remarks, insubordination, bias, and sexism, which she had experienced that she believed constituted a hostile work environment. For example, a coworker grabbed and rearranged his genitals in front of Harper while he described the tight fit of his wedding tuxedo to her.

33. The EEO office completed the investigation in or around the end of May 2020. EEO then turned the file over to the HR business partner for the Advance Development Program. In or around the end of June, HR called Harper to ask her questions regarding some complaints members of her team made about her leadership. Allegations were being made that Harper was mean and asking more of some employees than others.

34. On July 14, 2020, Lockheed informed Harper that there were two investigations against her: one for sexual harassment and the other for "Full Spectrum Leadership." Lockheed also informed Harper that "while most of the allegations were not substantiated, many of them were." Harper was told that her "emails were overly harsh," she did not treat employees equally,

her "unavailability for the team is a problem," and that leadership "no longer had confidence in her ability to be a leader."

35. Harper was then informed that because of the two investigations, she was being suspended for two weeks without pay, demoted to a non-leadership position, and moved to another program to work under a different Director of Contracts.

36. Further, Lockheed notified Harper that for the remainder of the week, she was required to only work on a transition of her work to the new team lead, a white employee. Harper was also informed that she could clear her office upon the conclusion of the discussion and that her team would be brought into the office later that day for a meeting to discuss the change. Harper was not shown the results of the investigation, despite her request.

37. A contracts staff position is less desirable than the Advance Development Program Contracts Manager position. The demotion to contracts staff stripped Harper of her managerial duties. Because of this, Harper's career was diminished in the eyes of her coworkers and was unlikely to be promoted in the Aeronautics Division and company. In fact, shortly after the demotion was announced, Harper was told by another manager that her demotion would be an obstacle when bidding for other positions or promotions within company.

38. Harper had no alternative but to resign on July 31, 2020 because of her demotion.

39. Due to Lockheed's EEO investigation against her and subsequent demotion, Harper has suffered economic damages, reputational harm, and physical and emotional distress.

**COUNT I**
**Title VII Discrimination**
**42 U.S.C. § 2000e, *et seq.***

40. Harper incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

41. Harper is an "employee" as defined in 42 U.S.C. § 2000e(f).

42. Lockheed is an "employer as defined in 42 U.S.C. § 2000e(b).

43. Harper is an African American female and falls within a class of persons protected under Title VII.

44. At all times relevant to this complaint, Harper was fully qualified for her Manager of Contract Negotiations and Advance Development Program Contracts Manager positions at Lockheed.

45. Lockheed took materially adverse actions against Harper when it continuously subjected her to different standards in the workplace than its white and male employees. Lockheed further discriminated her when it demoted her, effective August 3, 2020. Lockheed's discrimination against Harper through her disparate treatment resulted in Harper's constructive discharge from the company on July 31, 2020.

46. Lockheed had no legitimate business reasons for the adverse actions it took against Harper.

47. Lockheed's stated and forthcoming reasons for the adverse actions against Harper are pretextual.

48. Harper sustained damages as the result of Lockheed's illegal discrimination in violation of Title VII, including, but not limited to, damage to her career, and emotional, mental, and physical distress and anxiety.

49. Harper is entitled to such legal or equitable relief as will effectuate the purposes of the statute, including but not limited to economic and compensatory damages, as well as reasonable costs and attorneys' fees.

**COUNT II**
**Title VII Retaliation**
**42 U.S.C. § 2000e,** *et seq.*

50. Harper incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

51. Harper is an "employee" as defined in 42 U.S.C. § 2000e(f).

52. Lockheed is an "employer as defined in 42 U.S.C. § 2000e(b).

53. Harper engaged in protected activity when she complained to Lockheed about racist and sexist comments and actions by subordinates and supervisors, disparate treatment by subordinates and supervisor in or about December 2019, May 2019, January 2020, February 2020, and March 2020.

54. Lockheed retaliated against Harper for engaging in protected activity when it suspended her for two weeks on July 14, 2020 and subsequently demoted her effective August 3, 2020. Lockheed's retaliation against Harper resulted in Harper's constructive discharge from the company on July 31, 2020.

55. Lockheed's stated and forthcoming reasons for Harper's suspension and demotion are pretextual.

56. Harper has suffered damages as a result of Lockheed's unlawful actions.

57. For Lockheed's unlawful retaliation against Harper in violation of Title VII, Harper is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including but not limited to reinstatement, economic and compensatory damages, and reasonable costs and attorneys' fees.

**COUNT III**
**Family and Medical Leave Act Retaliation**
**29 U.S.C. § 2615,** *et seq.*

58. Harper incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

59. Harper is an "employee" as defined in 29 U.S.C. § 2611(4)(A).

60. Lockheed is an "employer as defined in 29 U.S.C. § 2611(2)(A).

61. Harper had a right under the FMLA to take twelve (12) work weeks of leave during any twelve (12) month period for family and health-related matters, pursuant to 29 U.S.C. § 2612(a)(1).

62. During her employment, Harper exercised her right under the FMLA to take leave.

63. Harper engaged in protected conduct when she requested and took FMLA leave, and when she complained of retaliation for exercising her rights under the FMLA.

64. Lockheed violated the FMLA when following Harper's FMLA leave: Harper was subjected to comments about her lack of presence in the office or availability by upper management; Harper was admonished during her annual review for her lack of presence in the office or availability.  As a result of the EEO and Full Spectrum Leadership investigations into allegations against Harper, it was expressed to Harper that her "lack of availability in the workplace was a problem" during periods of approved FMLA leave.

65. Lockheed retaliated against Harper in response to Harper exercising her rights under the FMLA.

66. Lockheed's stated and forthcoming reasons for the adverse actions against Harper are pretextual.

67.     Harper demands such legal or equitable relief as will effectuate the purposes of the FMLA, including, but not limited to economic damages, liquidated damages, compensatory damages, punitive damages, reasonable attorney's fees, pre-judgment interest, court costs, and any other relief that this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Harper demands all claims be tried by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Harper, by and through undersigned counsel, prays that judgment be entered against Defendant granting the following relief:

a. Reinstatement or, in lieu thereof, full front pay, with benefits;

b. Economic damages for lost compensation and damages;

c. Compensatory damages, including but not limited to pain and suffering, emotional distress and reputational damage;

d. Reasonable costs and experts' and attorneys' fees; and

e. Any other such relief that the Court may deem just and equitable.


Respectfully submitted,

/s/ Kellee Boulais Kruse
R. Scott Oswald
Kellee Boulais Kruse
The Employment Law Group, P.C.
888 17th Street, NW, 9th Floor
Washington, D.C. 20006
(202) 261-2838
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
kkruse@employmentlawgroup.com
*Attorneys for Plaintiff*