UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| KEISHONNA HARPER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-0571-O |
| § | |
| LOCKHEED MARTIN CORP., § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendant's Motion for Summary Judgment (ECF Nos. 36–38), filed December 20, 2021; Plaintiff's Response (ECF Nos. 39–41), filed January 10, 2022; and Defendant's Reply (ECF No. 42), filed January 24. The Court **GRANTS** the motion in part and **DENIES** the motion in part.

### I.    BACKGROUND

#### A.  Overview

Keishonna Harper worked for Lockheed Martin Corp. as a subcontract administrator in California.[1] In 2018, she transferred to the position of contracts negotiation manager at Lockheed's Fort Worth location.[2] Several Fort Worth employees began to complain about Harper's leadership and expressed concerns about harassment and inappropriate language.[3] Lockheed investigated the complaints and suspended Harper, removing her supervisory responsibilities.[4] Harper resigned from Lockheed.[5] She then sued Lockheed for discrimination and retaliation in violation of federal employment law.[6]

---

[1] Def.'s App. Ex. 2, at 1, ECF No. 38-2.
[2] *Id.*
[3] *Id.* Ex. 3, at 6–8, ECF No. 38-3.
[4] *Id.* Ex. 5, at 34, 37–41, ECF No. 38-5.

### B. Harper's Transfer and Performance

After transferring to Lockheed's Fort Worth location in 2018, Harper began reporting indirectly to contracts negotiation director Terry Ford.[7] Several employees provided feedback to Ford about Harper's leadership.[8] They expressed concerns that she micromanaged the team, did not properly delegate authority, did not make decisions in a timely manner, and used profanity in the workplace, among other things.[9] Ford also received reports that Harper had talked openly about challenges she had experienced as a woman of color.[10]

Ford met with Harper to discuss the team's feedback. Ford advised her to seek help from a trained professional at Lockheed regarding any racial challenges she faced in the workplace.[11] Ford also discussed the negative feedback he had received.[12] According to Ford, Harper "received that feedback extremely well."[13] In February 2019, Ford took supervisory responsibility over Harper and her team, and Harper began formally reporting to him.[14] Ford continued to receive negative reports about Harper, primarily concerning her micromanagement and unavailability.[15] In April, Harper was approved for leave under the Family and Medical Leave Act ("FMLA") to care for her ill father.[16] Harper's FMLA absences amounted to less than

---

[5] *Id.* Ex. 1, at 65, ECF No. 38-1.
[6] *See* Am. Compl., ECF No. 30.
[7] Def.'s App. Ex. 3, at 3–5, ECF No. 38-3.
[8] *Id.* at 6–7.
[9] *Id.* at 7, 31.
[10] *Id.* at 26.
[11] *Id.* at 28–30.
[12] *Id.* at 8–9, 31–32.
[13] Def.'s App. Ex. 3, at 9, ECF No. 38-3.
[14] *Id.* at 4.
[15] *Id.* at 9–10.
[16] Pl.'s App. 191, ECF No. 41.

forty hours that year.[17] The majority of Harper's time away from the office was not protected by the FMLA.[18]

At the end of 2019, Harper began reporting to Lou Smolinski.[19] In early 2020, Ford and Smolinski met with Harper to discuss her performance in 2019.[20] During the performance review, Ford and Smolinski advised Harper to (1) allow her team to make more independent decisions, (2) increase her availability in the office, and (3) permit her subordinates to take time off.[21] Ford and Smolinski also asked Harper if she had used profanity in a meeting.[22] Harper said she had not.[23] Harper then asked one of two questions—the record conflicts about which one: "Would you be giving me this feedback if I was a man?" or "Would you be receiving this feedback if I was a man?"[24] Whatever the question, Ford and Smolinski's answer was "no."[25] They then gave Harper an "exceeds" rating, which was the best possible rating in Harper's department at the time.[26]

### C. Harper's Complaints to Lockheed

In early 2020, Harper told Human Resources ("HR") partner Britney Collver that she had concerns about Ford.[27] Harper complained about Ford's advice in 2018 that she should discuss concerns she had about racial issues with a professional rather than openly in the workplace.[28] Harper also expressed concern about being told in her performance review that she had taken

---

[17] Def.'s App. Ex. 1, at 19–20, 44–45, ECF No. 38-1.
[18] *Id.* Ex. 2, at 3, ECF No. 38-2.
[19] *Id.* Ex. 3, at 14–16, ECF No. 38-3.
[20] *Id.* at 13–14, 21–22.
[21] *Id.* at 23–24.
[22] Def.'s App. Ex. 1, at 27–28, 41, ECF No. 38-1.
[23] *Id.* at 41–42.
[24] *Id.* at 29–30, 78.
[25] *Id.*
[26] *Id.* at 47–48.
[27] Def.'s App. Ex. 5, at 4–5, ECF No. 38-5.
[28] *Id.* at 5–6.

excessive time off, particularly because some of that time was protected under the FMLA.[29] Collver followed up with Smolinski, who said he was aware of the FMLA absences and clarified that the "root of his attendance concerns" was the non-FMLA activity.[30]

Harper also reported to Collver a comment by a subordinate, Jennifer Matchett. Harper was absent from work on Martin Luther King, Jr. Day to deal with an unexpected issue concerning her father's health.[31] She did not tell her team why she was gone that day.[32] Another employee asked Matchett if she knew why Harper was gone, and Matchett speculated that Harper might have taken the day off due to the holiday.[33] Harper did not find the comment offensive, but because another employee did, Harper reported the comment to Collver.[34]

### D. Lockheed's Investigation

Employees continued to complain about Harper. Collver received complaints that Harper was disrespectful, mistreated her subordinates, and had made sexually explicit comments to fellow employees.[35] Lockheed then began investigating the leadership concerns and potential harassment issues.[36] Lockheed interviewed several employees, including Harper.[37] The investigation substantiated many of the allegations concerning Harper's sexually explicit comments.[38] Collver prepared a report, and a disciplinary board convened to discuss the results of the investigation.[39]

---

[29] *Id.* at 7–8.
[30] *Id.* at 9–10.
[31] *Id.* Ex. 2, at 1–2, ECF No. 38-2; *id.* Ex. 5, at 12–13, ECF No. 38-5.
[32] Def.'s App. Ex. 2, at 1–2, ECF No. 38-2; *id.* Ex. 5, at 12–13, ECF No. 38-5.
[33] Def.'s App. Ex. 2, at 1–2, ECF No. 38-2; *id.* Ex. 5, at 12–13, ECF No. 38-5.
[34] Def.'s App. Ex. 5, at 12–14, ECF No. 38-5.
[35] *Id.* at 21–23; *id.* Ex. 6, at 12–13, ECF No. 38-6.
[36] Def.'s App. Ex. 5, at 12–14, ECF No. 38-5.
[37] *Id.* Ex. 2, at 2, ECF No. 38-2.
[38] *Id.*
[39] *Id.* Ex. 5, at 34–35, ECF No. 38-5.

The board decided to stay the determination about discipline pending further investigation of Harper's leadership style.[40] The board reconvened after a few more months' investigation.[41] Collver's report concluded that Harper was not meeting Lockheed's leadership expectations.[42] After reviewing Collver's report, the sexual-harassment investigation, and the leadership investigation, the board decided to suspend Harper for two weeks.[43] In addition to suspending her, the board reassigned Harper to a non-leadership position in the same department.[44] Harper's discipline had no effect on her seniority or ability to be promoted.[45] Harper resigned from Lockheed about a month later.[46]

Harper then filed a complaint with the EEOC, followed by this lawsuit.[47] Her amended complaint states four claims against Lockheed: (1) discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; (2) discrimination under 42 U.S.C. § 1981; (3) retaliation under Title VII, 42 U.S.C. § 2000e-3; and (4) retaliation under the FMLA, 29 U.S.C. § 2615.[48] Lockheed moved for summary judgment on all claims, and the parties briefed the issues.

## II. LEGAL STANDARD

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed 'to

---

[40] *Id.* at 35–36.
[41] *Id.*
[42] Def.'s App. Ex. 5, at 27–32, ECF No. 38-5.
[43] *Id.* at 34; Pl.'s App. 188, ECF No. 41.
[44] Def.'s App. Ex. 5, at 40, ECF No. 38-5.
[45] *Id.* at 40–41.
[46] *Id.* Ex. 1, at 65, ECF No. 38-1; Pl.'s App. 7, ECF No. 41.
[47] Pl.'s App. 134, ECF No. 41; Compl., ECF No. 1.
[48] Am. Compl. 8–12, ECF No. 30.

secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250. "[Y]et the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (cleaned up). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Id.*

### III. ANALYSIS

#### A. Discrimination Claims

Harper's first two claims are for discrimination under Title VII and 42 U.S.C. § 1981. Because the elements for discrimination under Title VII and § 1981 are identical, the same analysis applies to claims under both laws. *Pratt v. City of Houston*, 247 F.3d 601, 606 n.1 (5th

Cir. 2001). Harper's claims rely on circumstantial evidence of discrimination,[49] so the Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The plaintiff bears the initial burden to establish a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's actions. *Id.* "If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff." *Alvarado*, 492 F.3d at 611. The plaintiff must then show either that the employer's proffered reason is merely a pretext for discrimination, or that the plaintiff's protected characteristic was at least a "motivating factor" for the employer's actions. *Id.*

Harper has not established a prima facie case of discrimination. To establish a prima facie case of discrimination, Harper must show that "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." *Id.* Lockheed does not dispute the first two elements—Harper was qualified for her position, and, as an African American woman, she is a member of a protected class.[50] The parties dispute (a) whether Harper suffered an adverse employment action and (b) whether comparable employees were treated more favorably. Harper has failed to show she suffered an adverse employment action, so the Court need not address whether Lockheed treated comparable employees more favorably than it treated Harper.

---

[49] *See* Def.'s Summ. J. Br. 20, ECF No. 37; Pl.'s Resp. Br. 12, ECF No. 40.
[50] *See* Pl.'s Resp. Br. 13, ECF No. 40. *See generally* Def.'s Reply Br., ECF No. 42.

Generally, "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."[51] *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (cleaned up). Harper argues that her transfer to a different position and her resignation both qualify as ultimate employment decisions.[52] Lockheed disagrees and argues that, as a preliminary matter, Harper disavowed those claims by failing to raise them in her deposition.[53] Lockheed is correct. In her deposition, Harper stated that Lockheed discriminated against her by (1) inappropriately handling her complaints, and (2) reprimanding her for being out of the office. Neither are ultimate employment decisions.

Harper's deposition narrowed the scope of her discrimination claims. When asked to describe the discriminatory actions Lockheed took against her, Harper said Lockheed had failed to take action when she had "made statements and complaints about things that were being said to [her] or against [her] that were racist and sexist."[54] Harper agreed that her discrimination claims were essentially that Lockheed "failed to thoroughly investigate and take appropriate actions related to complaints [she] made internally."[55] She then added that "the white men and white women who had to take leaves of absences for work to either their medical issues or those of their spouse, were not reprimanded for an inability of being in the office."[56] Counsel confirmed with Harper that her discrimination claims rested on (1) Lockheed failing to "thoroughly investigate and take appropriate actions related to [Harper's] complaints," and (2) Lockheed "reprimand[ing] [Harper] for not being in the office."[57] Counsel then asked Harper,

---

[51] A broader standard applies to Title VII retaliation claims. *See McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).
[52] *See* Pl.'s Resp. Br. 13–15, ECF No. 40.
[53] *See* Def.'s Summ. J. Br. 21–25, ECF No. 37.
[54] Def.'s App. Ex. 1, at 33, ECF No. 38-1.
[55] *Id.* at 34.
[56] *Id.*
[57] *Id.*

"Is there anything else other than those two things that you believe [Lockheed] would have done differently or not done at all if you were a different race?"[58] Harper replied, "Not that I can think of at the moment."[59]

Harper is bound by her deposition testimony. In that testimony, Harper did not say that her transfer or resignation are the basis of her discrimination claims. Lockheed correctly states that Harper's testimony narrows her claims. Even if Lockheed were wrong, Harper does not say so. In response, Harper does not address Lockheed's argument or provide evidence to the contrary. It is doubtful that she could rebut her own deposition, as "a plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). Regardless, Harper submitted no evidence contesting Lockheed's claim that her deposition narrowed her discrimination claims, and she has waived any argument to the contrary.

Instead, Harper relies on her amended complaint. She says that Lockheed discriminated against her by inappropriately handling her complaints and reprimanding her.[60] Then, citing a single paragraph in her amended complaint, Harper says she also suffered "a demotion and constructive discharge as adverse employment actions."[61] But "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) (citation and internal quotation marks omitted). "[R]ather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni*, 278 F.3d at 451. By

---

[58] *Id.* at 35.
[59] *Id.*
[60] *See* Pl.'s Resp. Br. 13, ECF No. 40.
[61] *See id.* (citing First Am. Compl. 12, ECF No. 30 ("Lockheed discriminated against Harper when it marginalized her, demoted her, and constructively discharged her.")).

failing to respond to Lockheed's argument that she is bound by her deposition, Harper has failed to create a genuine dispute of material fact regarding the basis of her discrimination claims.

Harper's discrimination claims, narrowed by her deposition, do not challenge an ultimate employment decision. Her claims rest on allegations that Lockheed (1) inappropriately handled her complaints, and (2) reprimanded her for being out of the office. Neither of those actions resemble "hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559 (citation and internal quotation marks omitted). And the Fifth Circuit has explicitly held that "[c]hastisement by superiors" is not an adverse employment action. *Credeur v. La. ex rel. Off. of Att'y Gen.*, 860 F.3d 785, 798 (5th Cir. 2017). Again, Harper does not dispute the conclusion that neither of her claims are ultimate employment decisions.[62] Harper has failed to present a prima facie case of discrimination, so the Court **GRANTS** summary judgment in favor of Lockheed on Harper's discrimination claims.

### B. Title VII Retaliation Claim

Harper's next claim is for retaliation under Title VII. The *McDonnell Douglas* framework also governs the Title VII retaliation claim. *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 618 (5th Cir. 2020). Harper bears the initial burden to present a prima facie case of Title VII retaliation. *Id.* "Once the plaintiff meets her initial burden, the burden shifts to the employer 'to articulate some legitimate, nondiscriminatory reason' for its actions." *Id.* at 619 (quoting *McDonnell Douglas*, 411 U.S. at 802). "If the employer proffers a legitimate, nondiscriminatory reason, the burden then returns to the plaintiff to prove that the employer's reason is pretext for unlawful discrimination." *Id.*

To establish a prima facie Title VII retaliation case, Harper must show "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and

---

[62] *See id.*

(3) that a causal link existed between the protected activity and the adverse action." *Id.* at 618 (cleaned up). Harper says she engaged in protected activity in late 2019 and early 2020 when she submitted several complaints to HR.[63] Harper argues that Lockheed retaliated against her for engaging in that protected activity by (1) suspending her, (2) reassigning her to a different position, and (3) constructively discharging her.[64]

Lockheed does not dispute that Harper meets the first two elements of the prima facie case—she engaged in protected activity, and she suffered adverse employment action.[65] Lockheed argues that it is entitled to summary judgment on the third element because Harper has provided no evidence of causation between the protected activity and the adverse action.[66] In response, Harper proffers two pieces of causation evidence: (1) temporal proximity and (2) disparate treatment.[67]

Harper has shown temporal proximity. An adverse employment action that took place near the time of the protected activity may imply retaliation. *See Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). Harper argues that her last complaint to HR in March 2020 was sufficiently close to her suspension in July 2020 to support an inference of retaliation.[68] The Fifth Circuit has noted that four months may be "close enough" to show a causal connection. *Id.* In any event, Lockheed does not dispute that the events were temporally proximate. That is enough to support a prima facie case. But temporal proximity "does not, on its own, establish that the company's stated explanation . . . was mere pretext." *Id.* Lockheed says it investigated Harper because it received complaints about her from her subordinates. After

---

[63] *See id.* at 17–18.
[64] *See id.*
[65] As noted in footnote 51, *supra*, a broader definition of adverse employment action applies to Title VII retaliation claims than to discrimination claims. *See McCoy*, 492 F.3d at 559.
[66] *See* Def.'s Summ. J. Br. 32–34, ECF No. 37.
[67] *See* Pl.'s Resp. Br. 17, ECF No. 40.
[68] *See id.* at 18.

substantiating a number of those complaints, Lockheed suspended Harper and removed her leadership responsibilities.[69]

Harper says Lockheed's reasons were merely a pretext to retaliate against her. "At the pretext stage," a plaintiff must show "but-for causation, which requires more than mere temporal proximity." *Id.* 243–44. "[T]he combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999). Harper bolsters her causation evidence by pointing to (1) disparate treatment, (2) factual inconsistencies in the record about her behavior (3) exceptional performance reviews, (4) strong leadership qualities, (5) Lockheed's incomplete investigation of her complaints, and (6) Lockheed's lack of transparency regarding the investigation's results.[70]

Most of Harper's causation evidence is irrelevant. For example, Harper argues that she received high performance ratings and that her peers regarded her as a strong leader *before* Lockheed received complaints about her.[71] Harper's argument does not undermine Lockheed's reason for suspending her. To the contrary, that Lockheed believed Harper behaved well before it learned of her misconduct bolsters Lockheed's justification. Harper also claims that Lockheed substantiated only "some" of the complaints against her.[72] Again, that argument cuts against Harper, not Lockheed. "'[E]ven an incorrect belief that an employee's performance is inadequate' is a legitimate reason" for adverse action. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (citation omitted). In other words, evidence that Lockheed was wrong about some of the complaints against Harper is not necessarily evidence that those

---

[69] Def.'s App. Ex. 5, at 162–82, 79, ECF No. 38-5.
[70] *See* Pl.'s Resp. Br. 18–20, ECF No. 40.
[71] *See id.* at 19.
[72] *See id.*

12

complaints were pretextual. The same is true of Lockheed's lack of transparency regarding the investigation's results—that Lockheed did not provide Harper with the final investigation results is not evidence that the results were pretextual. Harper does not allege Lockheed lied about the results, let alone provide evidence supporting such an allegation.

The only relevant evidence is Harper's claims of (1) disparate treatment and (2) factual inconsistencies in the record about her behavior. As to disparate treatment, Harper testified that her subordinates, "nearly all of whom were white males," yelled at her, disrespected her, and made discriminatory comments about her.[73] Lockheed responds that Harper has no evidence those incidents took place "after she engaged in protected activity," or "because she engaged in protected activity."[74] Moreover, Lockheed says, Harper "fails to explain how her subordinates' alleged disrespect could create a fact issue as to whether [Lockheed's] decision to discipline her was retaliatory."[75] Lockheed ignores a crucial point in Harper's argument: the subordinates' disrespect is evidence of "severe disparate treatment."[76] Harper's argument is not that her subordinates' behavior is itself retaliatory conduct. Rather, she argues that Lockheed disciplining her for that behavior *and not her colleagues* is evidence of pretext. A reasonable juror could conclude as much. The factual inconsistencies Harper points to in the record further support that inference.[77] The Court thus **DENIES** Lockheed's summary judgment motion as to Harper's Title VII retaliation claim.

---

[73] *See id.* at 18; Pl.'s App. 8–11, 16–17, 21, 26–29, 117–18, ECF No. 41.
[74] Def.'s Reply Br. 14 n.24, ECF No. 18.
[75] *Id.*
[76] *See* Pl.'s Resp. Br. 18, ECF No. 40.
[77] Lockheed brushes off the factual inconsistencies as irrelevant to establishing pretext. *See* Def.'s Reply Br. 14 n.25, ECF No. 18. But contradictions among Lockheed's internal statements as to why it disciplined Harper may indicate that those reasons are pretextual.

### C. FMLA Retaliation Claim

Harper's final claim is for retaliation under the FMLA. Once again, the Court applies a burden-shifting framework. *See Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 583 (5th Cir. 2006). The plaintiff bears the initial burden to establish a prima facie case of FMLA retaliation. If the employee establishes a prima facie case, the burden shifts to the employer to provide a legitimate reason for the adverse action. *Id.* If the employer does so, the burden shifts back to the employee "to show by a preponderance of the evidence that the reasoning presented by the [employer] is a pretext for retaliation." *Id.*

To establish a prima facie case of FMLA retaliation, Harper must show that "1) [she] was protected under the FMLA; 2) [she] suffered an adverse employment action; and 3) [she] was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Id.* "The third element requires the employee to show 'there is a causal link' between the FMLA-protected activity and the adverse action." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017). Lockheed does not dispute the first element—Harper was protected under the FMLA.[78]

Harper satisfies the second element because she has shown that she suffered an adverse employment action. "Materially adverse actions . . . include any actions that would dissuade a reasonable employee from exercising [her] rights under the FMLA." *Lushute v. La., Dep't of Soc. Servs.*, 479 F. App'x 553, 555 (5th Cir. 2012).[79] Lockheed recycles its argument that Harper's deposition narrows her claim. But this time, Lockheed mispresents Harper's testimony. Lockheed says that Harper's retaliation claim is based only on comments that Harper's

---

[78] *See* Def.'s Summ. J. Br. 34–36, ECF No. 37.
[79] *Accord Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (applying the "dissuade a reasonable employee" standard to Title VII retaliation claims); *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008) (extending the standard to FMLA retaliation claims); *McArdle v. Dell Prod., L.P.*, 293 F. App'x 331, 337 (5th Cir. 2008) (same).

14

supervisor Terry Ford made.[80] Harper's deposition belies Lockheed's assertion. Harper testified that Lockheed retaliated against her by (1) not addressing her complaints, (2) investigating her for harassment, (3) suspending her, and (4) removing her leadership duties.[81] A reasonable juror could conclude that Harper's suspension and removal of leadership duties were materially adverse. *See id.*

Harper fails on the third element because she has provided no evidence of causation. Harper claims that Ford "admonished" her for taking FMLA leave and "made derogatory comments regarding her use of FMLA leave" during her 2019 performance evaluation.[82] But Ford's statements did not concern Harper's FMLA leave. According to Harper, "[t]hey never called it 'use of FMLA leave.' They always phrased it as being out of the office a lot, unavailability for the team."[83] The majority of Harper's time away from the office in 2019, and all her time away from the office in 2020, was not protected by the FMLA.[84] Lockheed provides evidence that Ford's statements concerned Harper's non-FMLA absences, not her protected absences. Harper, on the other hand, provides no evidence that Lockheed took adverse action against her because of her FMLA absences.[85] The Court thus **GRANTS** Lockheed's summary judgment motion as to Harper's FMLA retaliation claim.

---

[80] *See* Def.'s Summ. J. Br. 35, ECF No. 37; Def.'s Reply Br. 19–20, ECF No. 42.
[81] Def.'s App. Ex. 1, at 9–10, ECF No. 38-1.
[82] Pl.'s Resp. Br. 18, ECF No. 40.
[83] Pl.'s App. 20, ECF No. 41.
[84] *See* Def.'s App. Ex. 1, at 19–20, 44–45, ECF No. 38-1; *id.* Ex. 2, at 3, ECF No. 38-2.
[85] Lockheed's position could be viewed as providing a legitimate reason for Harper's discipline. That is, assuming Harper proves a prima facie case, Lockheed proffers a non-retaliatory justification for its actions: it disciplined Harper for excessive *non*-FMLA absences. Harper provides no evidence rebutting that legitimate reason. Either way, Harper's lack of evidence warrants summary judgment for Lockheed.

## IV. CONCLUSION

The Court **GRANTS** Lockheed's Motion for Summary Judgment (ECF No. 36) as to Counts I, III, and IV of Harper's amended complaint and **DISMISSES** those claims. The Court **DENIES** Lockheed's summary judgment motion as to Count II.

**SO ORDERED** this **17th day** of **March, 2022**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

16